## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **YEHUDA MILLER,** | § |
| | § |
| *Plaintiff,* | § |
| | §    Civil Action No.: 1:26-cv-2282 |
| v. | § |
| | § |
| **FEDERAL BUREAU OF INVESTIGATION,** | § |
| | § |
| *Defendant.* | § |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.     Plaintiff Yehuda Miller ("Plaintiff") brings this Complaint against the Federal Bureau of Investigation ("FBI" or "Defendant") to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and to remedy Defendant's unlawful withholding of records responsive to Plaintiff's valid FOIA request.

2.     Plaintiff submitted a FOIA request to the FBI seeking records concerning Ray Epps, an individual whose photograph appeared on the FBI's official wanted list in connection with the events of January 6, 2021, at the United States Capitol. Plaintiff seeks: (a) all communications and directives relating to the removal of Ray Epps from the FBI's wanted list; (b) all communications between the FBI and Ray Epps from January 1, 2020 through January 1, 2025; and (c) all files, records, and other communications relating to Ray Epps during that same period.

3.     The records Plaintiff seeks bear directly on a conspicuous and unexplained act of the FBI itself. Following January 6, 2021, the FBI publicly identified Ray Epps as "Photograph #16" in materials soliciting the public's assistance, and later removed him from those publicly disseminated materials without any public explanation. The current Director of the FBI has publicly stated that there are only two circumstances in which an individual is removed from such

materials: the individual has died, or the individual was working on behalf of the government. Ray Epps was alive at the time of his removal and remains alive today. The records Plaintiff seeks would reveal the actual basis for the FBI's decision—a matter squarely concerning the operations and activities of the government.

4. Despite having acknowledged the existence of responsive records and having reopened the request for additional processing following a dispute resolution challenge, the FBI has again categorically denied Plaintiff's request, invoking FOIA exemptions (b)(6) and (b)(7)(C) without adequately demonstrating that the public interest in disclosure fails to outweigh any privacy interests at stake. The FBI further wrongfully denied Plaintiff's requests for expedited processing and a fee waiver, and has failed to produce a Vaughn index or any itemized justification for the records it is withholding.

5. Plaintiff brings this action to compel the release of all non-exempt responsive records, to obtain an adequate Vaughn index, to secure a fee waiver, and to obtain all other appropriate relief.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

7. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) because Defendant's headquarters is located in the District of Columbia and the records sought are maintained in this district.

8. Plaintiff has exhausted all applicable administrative remedies. Plaintiff timely filed an administrative appeal with the U.S. Department of Justice Office of Information Policy ("OIP"), which was assigned Appeal No. A-2026-01487, received on May 21, 2026, with a response due

date of June 22, 2026. As of the filing of this Complaint, OIP has failed to make a timely determination on the appeal, and Plaintiff has therefore constructively exhausted administrative remedies. 5 U.S.C. § 552(a)(6)(A); id. § 552(a)(6)(C).

## PARTIES

9.    Plaintiff Yehuda Miller is an investigative journalist primarily engaged in disseminating information to the public on matters of significant civic and public interest, including government accountability and the events of January 6, 2021. Mr. Miller has published investigative reporting on this matter in The Gateway Pundit, which has a substantial national readership. Mr. Miller resides in Bergen County, New Jersey.

10.    Defendant Federal Bureau of Investigation is an agency of the federal government within the meaning of 5 U.S.C. § 551 and 5 U.S.C. § 552(f). The FBI's headquarters is located at 935 Pennsylvania Avenue, NW, Washington, D.C. 20535. The FBI has possession, custody, and/or control of the records that Plaintiff seeks.

## FACTUAL BACKGROUND

### The Public Interest in Ray Epps and the Events of January 6, 2021

11.    The events of January 6, 2021, at the United States Capitol remain a matter of profound and ongoing public interest. The role of various individuals on that date — including any participation by government informants, confidential sources, or undercover operatives — is of critical importance to the American public and to the integrity of the official government account of those events.

12.    Ray Epps is an individual whose photograph appeared as "Photograph 16" on the FBI's official wanted list in connection with the events of January 6, 2021. Video footage, which

received widespread national media coverage, shows Ray Epps on January 5 and January 6, 2021, urging members of the crowd to go "into the Capitol."

13.     Despite this documented conduct, Ray Epps was removed from the FBI's wanted list without being prosecuted for conduct similar to that which resulted in the prosecution of hundreds of other participants in the January 6 events. This disparate treatment, and the FBI's removal of Epps from materials it had circulated to the public, generated substantial public scrutiny, media coverage, and congressional inquiry.

14.     Only years later after sustained public skepticism, including from President Trump, Ray Epps was allowed to surrender and was offered a plea deal to a single misdemeanor.

15.     Kash Patel, the current Director of the FBI, stated publicly on a podcast prior to assuming that office that there are only two ways a person can be removed from the FBI's wanted list: the person dies, or the person was working undercover on behalf of the government.

16.     Because Ray Epps was alive at the time of his removal from the wanted list and remains alive today, the current FBI Director's own public statements raise serious and unanswered questions about the nature of the FBI's relationship with Ray Epps.

17.     The public interest in this matter has been expressed at the highest levels of government. President Donald Trump publicly referred to Epps by name, stating: "How about the one guy? Go in, in. Go in! Epps. Get in there! Go! Go! Go! Nothing happens to him." Then-Senator and now Vice President J.D. Vance stated: "If the January 6 committee was anything more than a sham it would look into the role of Ray Epps."

18.     In the United States Senate, Senator Ted Cruz of Texas questioned FBI Assistant Director Jill Sanborn at a January 2022 Judiciary Committee hearing: "Who is Ray Epps? There are a lot of people who are understandably very concerned about Mr. Epps. On the night of Jan. 5,

2021, Epps wandered around the crowd that had gathered and there is video out there of him chanting 'tomorrow, we need to get into the Capitol.' This behavior was so strange the crowd began chanting, 'Fed, Fed, Fed, Fed, Fed, Fed, Fed.' Ms. Sanborn, was Ray Epps a fed?" Senator Cruz further stated publicly: "Mr. Epps has not been charged with anything. No one's explained why a person videoed urging people to go to the Capitol, a person whose conduct was so suspect the crowd believed he was a fed, would magically disappear from the list of the people the FBI was looking at." Senator Tom Cotton of Arkansas joined Senator Cruz in pressing senior Justice Department officials during the same period regarding whether FBI agents or informants incited violence on January 6 or committed crimes. Senator Ron Johnson of Wisconsin publicly asked: "What about Epps? Did he work for the FBI?"

19.     In the House of Representatives, numerous members of Congress have publicly expressed suspicion that Ray Epps may have been acting as a federal agent or informant, including Representatives Clay Higgins, Troy Nehls, Thomas Massie, Matt Gaetz, Marjorie Taylor Greene, Paul Gosar, Andy Biggs, Eli Crane, Madison Cawthorn, Louie Gohmert, Jim Jordan, and Senator Mike Lee. Representative Massie asked publicly: "How did Ray Epps know that there were gonna be pipe bombs?" Representative Gaetz stated: "It's not the Proud Boys who engage in the initial breach. It's Ray Epps at that precise moment." Representative Greene publicly demanded: "Why is he a free man while others are rotting pretrial in prisons all over America? He organized people to go IN THE CAPITOL on Jan 6th." Representative Paul Gosar stated: "Epps is the one person seen on video directing people towards the Capitol seconds before violence broke out, yet he has never been arrested or charged with any crime while more than 800 others have and countless more remained jailed. If the Department of Justice has nothing to hide and is genuinely interested

in what happened on January 6, they should release every piece of information relating to Ray Epps' involvement on that day."

20.     Democrats on the January 6th Committee came to Epps' defense. Representative Jamie Raskin of Maryland, speaking on the House floor, dismissed the questions surrounding Epps, stating: "[P]oor Ray Epps. Leave that guy alone! Whoever he is." By expressing sympathy for Epps, when at the same time all other J6ers were considered insurrectionists, Rep. Raskin fueled more public suspicion, questions, and concern about Epps.

21.     The specific circumstances surrounding Epps' conduct on January 5 and 6, 2021, and his subsequent treatment by the government, are deeply suspicious and have further generated public concern. On the evening of January 5, 2021, Epps was recorded on video telling a crowd: "Tomorrow, we need to go INTO the Capitol. Into the Capitol!" The crowd immediately responded by chanting "Fed! Fed! Fed!" reflecting contemporaneous suspicion that Epps was a government plant inciting others to breach the Capitol. This spontaneous reaction was remarkable: the crowd itself, in real time, identified Epps' conduct as the behavior of a federal agent provocateur.

22.     The Department of Justice charged hundreds of individuals under 18 U.S.C. § 1512(c)(2), obstruction of an official proceeding, a felony carrying a potential twenty-year prison sentence. The government used social media posts, tweets, and text messages made prior to January 6 as evidence of intent to obstruct the certification of the Electoral College vote. Individuals who were not even present in Washington, D.C., on January 6 were charged with this felony based solely on statements they made beforehand. By any application of that charging standard, Epps — who on the night of January 5 announced on camera his intent to go "into the Capitol" the following day, directed crowds toward the Capitol on January 6, and by his own

admission "orchestrated" events — should have been among the first charged with obstruction. But he was not.

23.    On January 6, 2021, while most of the people who came to D.C. that day were listening to President Trump speak at the Ellipse, Epps was instead directing rally-goers to march toward the Capitol. Epps was present at the first barricade breach at approximately 12:52–12:54 p.m. — while President Trump was still speaking at the Ellipse. Immediately before the first bicycle racks were breached, Epps stepped forward and whispered into the ear of Ryan Samsel. Samsel was subsequently charged with and convicted of felonies and sentenced to years in prison. Others present with Epps at that moment were likewise indicted on felony charges and served significant prison sentences. In addition to the 1512 charge, those present were charged with 18 U.S.C. § 231(a)(3), interfering with law enforcement during a civil disorder, and even aiding and abetting assault of law enforcement under 18 U.S.C. § 111. But Epps was not charged with any offense related to the initial breach.

24.    Later on January 6, Epps put his hand on a large metal-framed "Trump" sign that was pushed into a line of police officers on the West Plaza of the Capitol. Other individuals who also touched the sign were arrested, charged with assault with a deadly weapon, and received substantial prison sentences. Marshal Neefe, Jonathan Copeland, and Jeffrey Newcomb, were among those charged with felonies including assault with a deadly or dangerous weapon for briefly making contact with the sign. Epps' hands were likewise on the sign, yet Epps was only charged with misdemeanors and sentenced to probation.

25.    At 2:12 p.m. on January 6, while still on the restricted Capitol grounds, Epps texted his nephew: "I was in the front with a few others. I also orchestrated it." If any other January 6 defendant had made a text of that nature, claiming to "orchestrate" or plan the events of January

6, it would have been the centerpiece of the government's evidence to support the most serious felonies, including seditious conspiracy. The government routinely took statements like that at face value to allege that individual January 6 defendants bore responsibility for everything that occurred that day and were singlehandedly responsible for "tearing the fabric of democracy."

26.     Epps' treatment by law enforcement was markedly and inexplicably different from that of other January 6 participants. Hundreds of January 6 defendants were not given the opportunity to surrender as Epps was. They were subjected to pre-dawn FBI raids at their homes, arrested, transported to jails in Washington, D.C., and held in pretrial detention. Epps, by contrast, was given the opportunity to voluntarily participate in interviews without arrest.

27.     He was not arrested for over two years. When charges were finally brought in September 2023, they consisted of a single misdemeanor count. He was permitted to plead guilty without ever being arrested, was not detained, and was ultimately sentenced to probation. The aggregate of this treatment stands in stark contrast to that received by hundreds of other January 6 participants who engaged in comparable or lesser conduct.

28.     Members of Congress have questioned FBI officials on the record during official hearings concerning the role of individuals who may have been working on behalf of the government on January 6, 2021, including with specific reference to Ray Epps. Congressional leaders have formally sought records and explanations from the FBI regarding this matter.

29.     This matter has received extensive national media coverage and is the subject of widespread public interest. Plaintiff has published reporting on this FOIA request and the FBI's responses in The Gateway Pundit, including coverage of the public interest grounds supporting disclosure.

**Plaintiff's FOIA Request and the FBI's Responses**

30.     On or about April 30, 2025, Plaintiff submitted a FOIA request to the FBI via the FBI's eFOIPA portal and by email to foipaquestions@fbi.gov.

31.     The request sought: (a) all communications and directives relating to the removal of Ray Epps from the FBI's wanted list; (b) all communications between the FBI and Ray Epps from January 1, 2020 through January 1, 2025; and (c) all files, records, and communications relating to Ray Epps from January 1, 2020 through January 1, 2025.

32.     On May 8, 2025, the FBI responded to Plaintiff's request, assigning it FOIPA Request No. 1667096-000, and denying the request in its entirety pursuant to FOIA exemptions (b)(6) and (b)(7)(C), 5 U.S.C. §§ 552(b)(6) and (b)(7)(C).

33.     While acknowledging the existence of responsive records, the FBI claimed their disclosure would constitute an unwarranted invasion of personal privacy and that Plaintiff had not sufficiently demonstrated that the public interest in disclosure outweighs those privacy interests.

34.     On May 13, 2025, Plaintiff contacted the FBI's FOIA Public Liaison to invoke dispute resolution services and to challenge the public interest determination.

35.     Plaintiff set forth in detail the grounds establishing that the public interest in disclosure substantially outweighs any asserted privacy interests, including the public statements of the current FBI Director regarding the only permissible grounds for removal from the wanted list, and the extensive congressional inquiry into this matter.

36.     On May 13, 2025, the FBI's FOIA Public Liaison acknowledged Plaintiff's challenge and informed Plaintiff that additional processing was required and that the request would be reopened and assigned a new FOIPA request number.

37.     The reopened request was assigned FOIPA Request No. 1667096-001.

38.     On May 11, 2026, the FBI issued an acknowledgment letter confirming receipt of the renewed request for processing.

39.     On May 14, 2026, the FBI issued a letter denying Plaintiff's request for expedited processing of FOIPA Request No. 1667096-001.

40.     The FBI found that Plaintiff had not provided sufficient information demonstrating that the statutory standards for expedition under 28 C.F.R. § 16.5(e)(1) were satisfied.

41.     This denial was issued notwithstanding Plaintiff's detailed showing that: (i) there is an urgency to inform the public about actual or alleged federal government activity; (ii) Plaintiff is primarily engaged in disseminating information; and (iii) this matter is one of widespread and exceptional media interest involving questions about the government's integrity affecting public confidence.

42.     On May 15, 2026, the FBI issued its final determination on FOIPA Request No. 1667096-001, again categorically denying disclosure of all responsive records pursuant to FOIA exemptions (b)(6) and (b)(7)(C).

43.     The FBI did not provide a Vaughn index or any itemized description of the records withheld, the specific exemption applicable to each withheld record or category of records, or any explanation of why the foreseeable harm standard was satisfied with respect to each withheld record.

44.     Plaintiff timely filed an administrative appeal with OIP, assigned Appeal No. A-2026-01487, received May 21, 2026, with a response due date of June 22, 2026.

45.     As of the date of this filing, OIP has failed to issue a timely determination, and Plaintiff has constructively exhausted all administrative remedies. See 5 U.S.C. § 552(a)(6)(C)(i).

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

Violation of FOIA — Wrongful Withholding of Agency Records

5 U.S.C. § 552(a)(3)(A) and (a)(4)(B)

46.     Plaintiff incorporates all foregoing paragraphs herein by reference.

47.     FOIA mandates that federal agencies shall make records promptly available to any person who submits a request that reasonably describes the records sought and complies with published agency procedures. 5 U.S.C. § 552(a)(3)(A).

48.     Plaintiff submitted a valid and properly described FOIA request to the FBI seeking records concerning Ray Epps.

49.     The FBI acknowledged the existence of records responsive to Plaintiff's request but withheld all such records in their entirety pursuant to FOIA exemptions (b)(6) and (b)(7)(C).

50.     The FBI bears the burden of demonstrating that claimed exemptions apply and that the foreseeable harm standard is satisfied. The FBI has failed to meet that burden. Its blanket invocation of privacy exemptions without an individualized assessment of the records, without a Vaughn index, and without an adequate public interest balancing analysis does not satisfy that burden.

51.     The public interest in understanding whether the FBI maintained a confidential informant or undercover relationship with Ray Epps, the circumstances of his disparate treatment relative to other January 6 participants, and the FBI's internal communications and directives relating to his removal from the wanted list substantially outweighs any privacy interest Ray Epps may assert. The current FBI Director's own public statements confirm the significance of this public interest.

52.     The FBI's categorical denial of all responsive records, without adequate justification and without a Vaughn index, constitutes an unlawful withholding of agency records in violation of FOIA.

53.     Plaintiff is entitled to injunctive and declaratory relief compelling the FBI to conduct an adequate search, produce all non-exempt responsive records, and disclose all reasonably segregable non-exempt portions of any partially exempt records. 5 U.S.C. § 552(a)(4)(B), (b).

## SECOND CAUSE OF ACTION

Violation of FOIA — Failure to Segregate Exempt from Non-Exempt Material / Improper

Categorical Denial

5 U.S.C. § 552(b)

54.     Plaintiff incorporates all foregoing paragraphs herein by reference.

55.     FOIA mandates that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). An agency may not categorically withhold an entire class of records under the guise of an exemption claim; it must review each record individually, disclose all non-exempt matter, and redact only those specific portions — if any — that are genuinely protected.

56.     The FBI made no individualized assessment of the records responsive to Plaintiff's request. Rather than reviewing each document and disclosing non-exempt material with targeted redactions, the FBI issued a single categorical denial withholding all responsive records in their entirety pursuant to exemptions (b)(6) and (b)(7)(C). The FBI provided no document-by-document analysis, no explanation of which portions of which records were exempt, and no basis for concluding that every word of every responsive record is shielded from disclosure.

57.    A categorical denial of this kind is unlawful. Even records that contain some exempt material — such as a third party's identifying information — will ordinarily contain substantial non-exempt matter that must be disclosed with appropriate redactions. The FBI's failure to conduct the required segregability analysis and to release all reasonably segregable non-exempt information constitutes an independent violation of FOIA.

58.    Plaintiff is entitled to an order directing the FBI to review each responsive record individually, disclose all reasonably segregable non-exempt information, and provide a particularized, record-by-record justification for any remaining withholdings sufficient to permit meaningful judicial review.

**THIRD CAUSE OF ACTION**

Violation of FOIA — Wrongful Denial of Expedited Processing

5 U.S.C. § 552(a)(6)(E); 28 C.F.R. § 16.5(e)

59.    Plaintiff incorporates all foregoing paragraphs herein by reference.

60.    FOIA requires agencies to process requests on an expedited basis whenever a requester demonstrates compelling need. Compelling need exists, among other circumstances, where: (i) there is an urgency to inform the public about an actual or alleged federal government activity and the requester is primarily engaged in disseminating information; or (ii) the request involves a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence. 5 U.S.C. § 552(a)(6)(E)(v); 28 C.F.R. § 16.5(e)(1)(ii), (iv).

61.    Plaintiff demonstrated qualification for expedited processing under both applicable standards. Plaintiff is primarily engaged in disseminating information to the public through investigative journalism, and this matter concerns actual or alleged federal government activity —

specifically, the FBI's relationship with Ray Epps and the circumstances of his removal from the wanted list — about which there is an urgent public need for information. This matter has received widespread and exceptional national media attention and raises serious questions about the government's integrity and public confidence in the FBI.

62.     The FBI's denial of Plaintiff's request for expedited processing was arbitrary, capricious, an abuse of discretion, and contrary to law.

63.     Plaintiff is entitled to a declaration that the denial of expedited processing was unlawful and an order directing the FBI to process Plaintiff's request on an expedited basis.

### FOURTH CAUSE OF ACTION

Violation of FOIA — Wrongful Denial of Fee Waiver

5 U.S.C. § 552(a)(4)(A)(iii); 28 C.F.R. § 16.11

64.     Plaintiff incorporates all foregoing paragraphs herein by reference.

65.     FOIA requires that fees be waived or reduced when: (i) disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government; and (ii) disclosure is not primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii).

66.     Plaintiff requested a fee waiver. The requested records directly concern the operations and activities of the FBI in connection with the events of January 6, 2021, a matter of paramount national public interest. Disclosure of these records would contribute significantly to public understanding of the FBI's conduct. Plaintiff seeks these records not for any commercial purpose but for public interest journalism and advocacy.

67.     The FBI failed to properly evaluate and grant Plaintiff's fee waiver request. This denial was arbitrary, capricious, and contrary to law.

68.    Plaintiff is entitled to a fee waiver and to a declaration that the FBI's denial of the fee waiver request was unlawful.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff Yehuda Miller respectfully requests that this Court:

a)  Declare that Plaintiff is entitled to disclosure of all records responsive to Plaintiff's FOIA request that are not lawfully exempt from disclosure;

b)  Declare that the FBI's categorical denial of Plaintiff's FOIA request violates FOIA;

c)  Declare that the FBI's denial of expedited processing was arbitrary, capricious, and contrary to law;

d)  Declare that the FBI's denial of Plaintiff's fee waiver request was arbitrary, capricious, and contrary to law;

e)  Order the FBI to conduct a thorough and adequate search of all systems of records reasonably likely to contain responsive documents and to produce all non-exempt responsive records to Plaintiff without further delay;

f)  Order the FBI to review each responsive record individually.

g)  Order the FBI to disclose all reasonably segregable non-exempt portions of any partially exempt responsive records;

h)  Order the FBI to produce a complete and adequate Vaughn index for all records withheld in whole or in part;

i)  Order the FBI to process Plaintiff's request on an expedited basis;

j)  Order the FBI to grant Plaintiff's fee waiver request;

k)  Award Plaintiff its reasonable attorney's fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

l)    Grant such other and further relief as this Court deems just and proper.

**[DATE AND SIGNATURES ON THE FOLLOWING PAGE]**

Dated: June 26, 2026

Respectfully submitted,

Jonathan S. Gross
DC Bar ID: MD0162
2833 Smith Ave., Suite 331
Baltimore, MD 21209
Telephone: (443) 813-0141
Email: jonathansgross@gmail.com

/s/ Mark L. Javitch
**Mark L. Javitch**
California SBN 323729
Javitch Law Office
3 East 3rd Ave., Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
Email: mark@javitchlawoffice.com
*Application Pending*

*Attorneys for Plaintiff Yehuda Miller*